IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WALANDO KENNEY,**

    **Petitioner,**

v.                                                     **Civil Action No. 1:19cv19**
                                                             **(Judge Kleeh)**

**FREDERICK ENTZEL,**

    **Respondent.**

## REPORT AND RECOMMENDATION

On February 7, 2019, the *pro se* Petitioner, Walando Kenney ("Kenney"), an inmate at FCI Hazelton in Bruceton Mills, West Virginia, initiated this case by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the Bureau of Prisons' ("BOP") calculation of his sentence and in particular, his pre-trial detention time during which he alleges he was in the primary custody of federal officials. ECF No. 1. Along with his petition, Kenney filed an emergency motion for appointed counsel, a motion to exceed the page limits, and a motion to incorporate a previous proceeding into this case.[1] ECF Nos. 2, 3, 4. Pursuant to a Notice of Deficient Pleading, on February 8, 2019, Kenney paid his $5.00 filing fee. ECF No. 7.

By separate Orders entered April 11, 2019, Petitioner's motion for appointed counsel was denied and his motions to exceed the page limits and to incorporate the prior proceedings into this case were denied. ECF Nos. 10, 11.

On April 11, 2019, Respondent was directed to show cause why the petition should not be granted. ECF No. 9. On April 24, 2019, Respondent moved for an extension of time; by Order entered April 29, 2019, the same was granted. ECF Nos. 14, 15. On June 3, 2019, Respondent filed

---

[1] A prior iteration of this case was dismissed in this Court on August 8, 2018 for failure to exhaust. See Kenney v. Kallis, Case No. 5:17cv135 (hereinafter "Kenney I").

1

a Motion to Dismiss or for Summary Judgment with a memorandum in support, attaching a sworn declaration and other exhibits. ECF Nos. 17, 18. On June 4, 2019, a Roseboro Notice was issued, and on June 27, 2019, Petitioner filed a response. ECF No. 21.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2, the undersigned now issues this Report and Recommendation.

## I. Factual Background

On October 18, 2012, incident to a traffic stop, the petitioner was arrested in Michigan by Michigan state authorities after the officers learned that he had multiple outstanding state felony warrants, including for drug trafficking and for operating a business to disassemble and resell parts from stolen automobiles, commonly known as a "chop shop." See Taylor, Michigan Police Department arrest record, ECF No. 18-1 at 15. Michigan state authorities also discovered heroin in the car the petitioner was driving. The petitioner was then taken to the Taylor Michigan Police Department. See Affidavit of Mark D. Vaughan, Special Agent, Homeland Security Investigations ("Vaughan Affidavit"), id. at 12 – 13.

The following day, October 19, 2012, federal authorities arrested the petitioner for drug trafficking. See Arrest Warrant, United States District Court for the Eastern District of Michigan (hereinafter "Eastern District of Michigan"), [id. at 20]; see also Criminal Complaint, Eastern District of Michigan. Id. at 11. In doing so, the Department of Homeland Security borrowed Kenney from Michigan state custody without a writ. Declaration of Jan Stopps, Correctional Programs Specialist, BOP Designation and Sentence Computation Center ("DSCC") ("Stopps Decl.") ECF No. 18-1, ¶ 6 at 2. State authorities did not release Kenney on bond. Id.

On May 21, 2013, the United States District Court for the Eastern District of Michigan sentenced the petitioner to 92 months in prison for heroin trafficking. See Judgment in a Criminal

Case, Eastern District of Michigan, ECF No. 18-1 at 22. The judgment contained no recommendation regarding whether the petitioner's federal sentence should be concurrent or consecutive to any other sentence. Id. This judgment was filed as a detainer to the state sentence that had not yet been imposed, because federal authorities did not have primary custody of Kenney. See Stopps Decl., ¶ 7 at 3; Detainer, United States Marshal Service ("USMS") Eastern District of Michigan. Id. at 3.

Seven months later, on December 18, 2013, the petitioner was returned to Michigan state custody for disposition of his unresolved state criminal charges.[2] On January 23, 2014, a Michigan state court sentenced the petitioner to a total of three - ten years imprisonment for operating a chop shop and receiving stolen motor vehicles, the charges associated with the outstanding warrants for which Michigan state authorities originally arrested him. See Judgment in Case No. 13-00922-01, Third Circuit Court, Wayne County, Michigan [id. at 33]. The state of Michigan credited Petitioner's state sentence with 75 days of "jail credit" for time spent in custody prior to sentencing. Id.

On November 20, 2015, the Eastern District of Michigan reduced the petitioner's federal heroin trafficking sentence from 92 months to 77 months. See Order Regarding Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2) [id. at 29].

On November 9, 2016, Petitioner completed serving his state sentence and was paroled from the state of Michigan to the USMS, to commence serving his federal sentence. See Michigan Department of Corrections ("MDOC") Biographical Info for MDOC inmate Walando Kenney. Id. at 35; see also USMS Form 129, § 2 "Custody Information." Id. at 17.

The BOP prepared a sentence computation for Kenney based on the 77-month term of imprisonment, to commence on November 9, 2016, the date that Michigan state authorities released

---

[2] The transfer process from Michigan to federal custody apparently began on June 11, 2013 and was completed on December 18, 2013. See Stopps Decl., ECF No. 18-1, ¶ 12 at 5; see also USMS Form 129 Prisoner Tracking, id. at 17.

3

him into federal custody. Stopps Decl., ¶ 9 at 4, ¶ 14 at 5. The BOP determined that Michigan state authorities never relinquished primary legal custody of Kenney at any time prior to November 9, 2016, when they released him into the custody of the USMS to begin serving his federal sentence. Stopps Decl., ECF No. 18-1, ¶¶ 7 – 8 at 4; see also MDOC Biographical Info, id. at 35; USMS Form 129, § 2, "Custody Information," id. at 17. The BOP awarded the Petitioner prior custody credit toward his federal sentence to reflect the remaining 386 days that Petitioner spent in Michigan state custody that had not been credited by Michigan state authorities towards his state sentence.[3]

Petitioner's projected date of release, with Good Conduct Time, is April 6, 2021.[4]

## II. The Pleadings

### A. The Petition

Although initially arrested by the State of Michigan on October 18, 2012,[5] Petitioner appears to allege that he was in the primary custody of federal authorities following his subsequent arrest on October 18, 2012 [sic] on the federal charges of drug trafficking, and remained in the sole physical custody of federal authorities his entire pre-trial detention period until he was sentenced on the federal charges on May 21, 2013.[6] ECF No. 1-1 at 2. Petitioner further alleges that he remained in federal custody for seven months, serving his sentence, until the state filed a writ (of habeas corpus *ad prosequendum*) to borrow him. Id.

---

[3] The BOP maintains that the following credits were applied: (1) 10/18/12 - 10/18/12; (2) 10/24/12 - 01/10/13; (3) 1/31/2013 - 5/16/2013; and (4) 5/30/2013 - 12/15/13. See Stopps Decl., ECF No. 18-1, ¶ 14 at 5; see also BOP Sentence Monitoring Computation Data, id. at 41.

[4] See BOP inmate locator, FEDERAL BUREAU OF PRISONS, FIND AN INMATE, https://www.bop.gov/inmateloc/ (last visited January 5, 2020).

[5] Kenney's petition makes no mention of the fact that he was first arrested by state authorities on October 18, 2012, and misstates the day of his arrest on federal charges, which occurred the following day.

[6] Petitioner gives varying dates for the date his federal sentence was imposed, either May 21, 2013, or May 23, 2013. See ECF No. 1 at 2; see also ECF No. 1-1 at 2. However, a review of Petitioner's criminal docket in the United States District Court for the Eastern District of Michigan Case No. 2:13cr20001 confirms that the date Petitioner was sentenced was May 21, 2013.

Accordingly, Petitioner argues that the BOP should calculate his federal sentence by commencing it on May 21, 2013, the date it was imposed; award him pre-trial credit for the period from October 18, 2012 to the date his federal sentence was imposed; and award him credit for each day since his federal sentence was imposed. Petitioner alleges that if properly calculated as outlined, he was eligible for release via good conduct time on May 18, 2018. Id. at 3.

Petitioner indicates that he fully exhausted his administrative remedies. ECF No. 1 at 7 - 8.

For relief, the petitioner requests an order from the court instructing the BOP to credit his sentence from his arrest date until present time. Id. at 8.

### B. Motion to Dismiss or for Summary Judgment

In support of their alternative motions, Respondent argues that the petition should be dismissed or summary judgment granted in its favor, because the BOP retains exclusive discretion to compute federal prison sentences; it properly exercised that discretion to compute the petitioner's federal sentence; and Petitioner is not entitled to any further prior custody credit. ECF No. 18 at 1 – 2. Respondent asserts that Petitioner "erroneously assumes he was exclusive and continuous federal custody beginning when he was first arrested," but that because Michigan was the first to arrest him, Michigan retained legal primary custody over Petitioner until he was released into federal custody to begin serving his federal sentence. Id. at 1. Therefore, the BOP properly declined to retroactively designate Petitioner's federal sentence as effectively concurrent with his state sentence. Id.

### C. Petitioner's Response

Petitioner reiterates his arguments and attempts to refute the Respondent's on the same. He insists that he is entitled to 215 days of "pretrial credit" against his federal sentence, from the time he was first arrested by Michigan state authorities on October 18, 2012, and then by federal authorities on October 19, 2012, and then remained in the exclusive custody of federal authorities

5

until his federal sentence was imposed on May 21, 2013, because this time has never been credited against another sentence. ECF No. 21-1 at 4 - 5. He contends that his sentence computation incorrectly begins at November 9, 2016, the date he was returned to the BOP from the state of Michigan on the writ. Id. at 5 - 6. He argues that since a "federal sentence begins on the date it is imposed," because he was in exclusive custody of the federal authorities from October 18, 2012 through May 21, 2013, therefore, he "was a sentenced [federal] inmate on May 21st, 2013." Id. at 6. He challenges Respondent's assertion that "there was no writ" and that he was "merely borrowed," arguing that "no writ of habeas corpus *ad prosequendum* was required because the state had voluntarily relinquished primary custody of . . . [him] to federal authorities[.]" He insists that Respondent's assertion that "time spent on a writ" is not time in federal custody because a prisoner is borrowed from state authorities and legally . . . remains in state custody" is incorrect. Id. at 7 - 8. He reiterates his belief that he is entitled to have his federal sentence credited for every day from October 18, 2012 – May 22, 2013 [sic], and his federal sentence computed to begin on May 22, 2013 [sic], giving him a release date of May 18, 2018. Id. at 10. Finally, he contends that the fact that he was in primary federal custody for all of this time is proven by the fact that Michigan only gave him 75 days of credit. Id.

### III. Standard of Review

**A. Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v.

6

Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Petitioner is proceeding *pro se* and therefore, the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 – 21 (1972) (*per curiam*); Erickson v. Pardus, 551 U.S. 89, 94 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, *supra* at 520–21. "[T]he mandated liberal construction afforded to *pro se* pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). However, "judges are [] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 – 8 (7th Cir. 1993).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that "because the plaintiffs [] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Thus, "[t]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

"Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy. Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 2509 (2007).

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. *See* Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## IV. Analysis

### A. Prior Custody Credit

Review of this petition must start with the basic premise that a federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."

18 U.S.C. § 3585(a).  BOP policy further provides, "[i]f the prisoner is serving no other federal sentence at the time the sentence is imposed, and is in <u>exclusive</u> federal custody (not under the jurisdiction of a federal writ of habeas corpus *ad prosequendum*) at the time of sentencing on the bases of the conviction for which the sentence is imposed, the sentence commences on the date of imposition, even if a state sentence is running along concurrently." BOP Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984), p. 1-12 (hereinafter "BOP PS 5880.28").[7] In addition, a defendant must be given credit 'for any time [s]he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another sentence.' 18 U.S.C. 3585(b)" <u>King v. DeBoo</u>, 2012 WL 1119763, *2 (N.D. W.Va. Apr. 3, 2012) (Bailey).

However, in some cases, a federal sentence may begin prior to the Attorney General gaining physical custody of the defendant. Where, as here, when a prisoner faces both state and federal charges, the term "received in custody" is particularly important. In such instances, the concept of primary jurisdiction applies. Primary jurisdiction is explained in <u>United States v. Smith</u>:

> In the context of successive criminal prosecutions by different sovereignties this "chief rule which preserves our two systems of courts from actual conflict of jurisdiction" means that the sovereignty which first arrests the individual acquires the right to prior exclusive jurisdiction  over him, . . . and this plenary jurisdiction is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by, the judgment of conviction entered against the individual by the courts of that first sovereignty . . .

<u>United  States v. Smith</u>, 812 F.Supp. 368, 371 (E.D.N.Y. 1993) (quoting <u>In re Liberatore</u>, 574 F.2d 78 (2nd Cir. 1978)); <u>see</u> <u>also</u> <u>Newsome v. Williams</u>, No. 3:15cv141, 2016 WL 11431790, *3 (N.D. W.Va. May 26, 2016) ("[W]hen an inmate is facing sentences imposed by both federal and state

---

[7] This policy is available in its entirety at < https://www.bop.gov/policy/progstat/5880_028.pdf >

authorities, the sovereign that first arrested the inmate retains primary custody over him until that sovereign's imposed sentence is satisfied.").

Primary jurisdiction remains vested in a sovereign until that sovereign relinquishes its primary jurisdiction through dismissal of the charges, bail release, parole release, or satisfaction of the sentence. See Coles v. DeBoo, No. 2:10cv70, 2010 WL 3767113 (N.D. W.Va. September 27, 2010; Chambers v. Holland, 920 F.Supp. 618, 622 (M.D. Pa. 1998) *aff'd,* 100 F.3d 946 (3rd Cir. 1996) *citing* United States v. Warren, 610 F.2d 680, 684 - 85 (9th Cir. 1980)("Primary jurisdiction remains vested in the state which first arrested the defendant until that jurisdiction relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence."). The mere fact that a state prisoner is in federal court pursuant to a federal writ of *habeas corpus ad prosequendum* does not mean that the prisoner's federal sentence has commenced. "Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998). See also Thomas v. Whalen, 962 F.2d 358, 361 n.3 (4th Cir. 1992)("A prisoner is not even in custody for purposes of section 3568[8] when he appears in federal court pursuant to a writ *ad prosequendum;* he is merely 'on loan' to federal authorities."); see also Newsome, 2016 WL 11431790 at *3 (*citing* United States v. Evans, 159 F.3d at 912.

The BOP, on behalf of the Attorney General, is responsible for calculating federal terms of imprisonment. See United States v. Wilson, 503 U.S. 329 (1992). The BOP must follow 18 U.S.C. § 3585(b) when calculating sentences:

---

[8] In computation of any federal sentence, two separate decisions must be made: when the federal sentence commences and to what extent the defendant can receive credit for time spent in custody prior to commencement of sentence. For offenses committed prior to November 1, 1987, each of these decisions is governed by repealed 18 U.S.C. § 3568, which specifies that the Attorney General is responsible for sentence computation decisions. For offenses committed on or after November 1, 1987, commencement of federal sentence is governed by 18 U.S.C. § 3585(a), and prior custody credit is governed by 18 U.S.C. § 3585(b).

authorities, the sovereign that first arrested the inmate retains primary custody over him until that sovereign's imposed sentence is satisfied.").

Primary jurisdiction remains vested in a sovereign until that sovereign relinquishes its primary jurisdiction through dismissal of the charges, bail release, parole release, or satisfaction of the sentence. See Coles v. DeBoo, No. 2:10cv70, 2010 WL 3767113 (N.D. W.Va. September 27, 2010; Chambers v. Holland, 920 F.Supp. 618, 622 (M.D. Pa. 1998) *aff'd,* 100 F.3d 946 (3rd Cir. 1996) *citing* United States v. Warren, 610 F.2d 680, 684 - 85 (9th Cir. 1980)("Primary jurisdiction remains vested in the state which first arrested the defendant until that jurisdiction relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence."). The mere fact that a state prisoner is in federal court pursuant to a federal writ of *habeas corpus ad prosequendum* does not mean that the prisoner's federal sentence has commenced. "Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998). See also Thomas v. Whalen, 962 F.2d 358, 361 n.3 (4th Cir. 1992)("A prisoner is not even in custody for purposes of section 3568[8] when he appears in federal court pursuant to a writ *ad prosequendum;* he is merely 'on loan' to federal authorities."); see also Newsome, 2016 WL 11431790 at *3 (*citing* United States v. Evans, 159 F.3d at 912.

The BOP, on behalf of the Attorney General, is responsible for calculating federal terms of imprisonment. See United States v. Wilson, 503 U.S. 329 (1992). The BOP must follow 18 U.S.C. § 3585(b) when calculating sentences:

---

[8] In computation of any federal sentence, two separate decisions must be made: when the federal sentence commences and to what extent the defendant can receive credit for time spent in custody prior to commencement of sentence. For offenses committed prior to November 1, 1987, each of these decisions is governed by repealed 18 U.S.C. § 3568, which specifies that the Attorney General is responsible for sentence computation decisions. For offenses committed on or after November 1, 1987, commencement of federal sentence is governed by 18 U.S.C. § 3585(a), and prior custody credit is governed by 18 U.S.C. § 3585(b).

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; *that has not been credited against another sentence.*

18 U.S.C. § 3585(b) (emphasis added).

In Wilson, the Supreme Court held that under 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." Wilson, 503 U.S. 329 at 337. Thus, prior custody credit cannot be awarded to a prisoner if the prisoner has already received credit towards another sentence. See United States v. Brown, 977 F.2d 574, 1992 WL 237275, at *1 (4th Cir. Sept. 25, 1992) (Defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences unless it has been credited against another sentence); United States v. Goulden, 54 F.3d 774, 1995 WL 298086 (4th Cir. May 17, 1995) (credit is only available for time spent in custody which has not been credited against another sentence).

Petitioner's claim is that he is entitled to credit for all of the time between October 18, 2012, when he was arrested by Michigan state authorities, through May 21, 2013, the day after his federal sentence was imposed (a period of 215 days). In advancing this argument, Petitioner maintains that this period of time was not applied to his state sentence and did not otherwise benefit him with respect to his state sentence. The undersigned acknowledges that the sentence calculation in this case is confusing, and it is understandable that Petitioner believes he is entitled to prior custody credit towards his federal sentence. However, a careful review of the exhibits, including records from the MDOC, establishes that Petitioner is not entitled to any prior custody credit, and his sentence as calculated by the BOP is correct.

Michigan state authorities arrested Kenney first; thus, when Kenney was arrested on October 18, 2012 by the Michigan state authorities, Michigan state authorities gained primary jurisdiction over him. Stopps Decl., ECF No. 18-1, ¶¶ 5 - 9 at 1 – 4, ¶ 20 at 8. The next day, federal authorities arrested Kenney. See Vaughan Affidavit"), ECF No. 18-1 at 12 – 13.

Federal authorities borrowed Kenney from the state without a writ of habeas corpus *ad prosequendum* and the state authorities did not release Kenney on bond; the federal authorities merely borrowed him. Stopps Decl., ECF No. 18-1, ¶ 6 at 2. Id. After Kenney was sentenced in federal court on May 21, 2013, he was returned to Michigan state authorities to resolve the state charges pending there. Id., ¶ 12 at 4 -5. Kenney was sentenced in Michigan state court, and then served the associated state sentence. Id., ¶ 13 at 5. Michigan state authorities did not relinquish their primary custody of Kenney until November 9, 2016, when he completed his state sentence and they released him into the custody of the USMS, to commence serving his federal sentence. Id., ¶ 13 at 5.

On October 4, 2017 (during the pendency of Kenney I, the first iteration of this case), the BOP contacted the United States District Court for the Eastern District of Michigan to determine whether the court had any objection to retroactively designating Kenney's federal sentence as effectively being concurrent with his state sentence. See Kenney I, ECF No. 21-1 at 5; see also Oct. 4, 2017 Letter to the Hon. Bernard A. Friedman, Kenney I, ECF No. 21-1 at 87 – 88. The BOP received no response to its letter. See Kenney I, Stopps Decl., ECF No. 21-1, ¶ 17 at 5. Accordingly, after sixty (60) days had expired,[9] the BOP independently analyzed Kenney's

---

[9] The BOP considers any inmate request for credit on a federal sentence for time spent serving a state sentence as a request to have the BOP retroactively designate that the inmate was effectively serving his federal sentence while he was in state custody. This is known as a *nunc pro tunc* designation. 18 U.S.C. § 3621(b) allows the BOP to designate a state institution for service of a federal sentence. Generally, the BOP will designate a state institution for service of a defendant's federal sentence where such a designation is "consistent with the federal intent of the federal sentencing court or with the goals of the criminal justice system." BOP policy requires the BOP to allow the federal sentencing court an opportunity to express any objection to retroactively deeming the inmate's federal sentence as effectively

13

sentence computation pursuant to the factors outlined in 18 U.S.C. § 3621(b) and declined to retroactively designate Kenney's federal sentence as effectively being concurrent with his state sentence. Id. In performing its investigation, the BOP determined that Michigan state authorities never relinquished custody of Kenney until November 9, 2016 when Michigan released him via parole to begin serving his federal sentence. See Stopps Decl., ECF No. 18-1, ¶¶ 7 - 9 at 3 – 4. The BOP sentence computation specialist assigned to this case personally contacted Michigan state authorities, who confirmed that they did not relinquish custody of Kenney until they released him to federal authorities on November 9, 2016. See Stopps Decl., id., n.2 at 4; see also MDOC Biographical Information Report, § "MDOC STATUS," ECF No. 18-1 at 35. Therefore, despite the fact that Petitioner was "borrowed" without a writ and taken by federal authorities and arrested on federal charges the next day, Petitioner was always in the primary custody of the state of Michigan until he finished serving his state sentence and was released on parole on November 9, 2016 to the USMS. See Taylor (Michigan) Police Department Arrest Record, ECF No. 18-1 at 15; see also MDOC Biographical Info, id. at 35.

Accordingly, Petitioner's contention that the BOP wrongfully computed his federal sentence because it did not commence on May 21, 2013, the date it was imposed, is incorrect. Because Petitioner was in the primary custody of the state, even though his federal sentence was imposed before his state sentence was, his federal sentence was applied as a detainer to as-yet-to-be-imposed state sentence, and it did not commence until November 9, 2016, the date that the state of Michigan relinquished its primary custody of him after he completed his sentence on the state charges.

---

being concurrent with his state sentence. The BOP allows sixty (60) days for the sentencing court to provide a response before the BOP independently analyzes the inmate's request pursuant to the factors outlined in 18 U.S.C. § 3621(b).

14

Because of the general rule that a defendant may not receive double credit for his detention time, Petitioner is not entitled to any additional credit as to his federal sentence. Accordingly, because 75 of the days Petitioner spent in the primary custody of the state of Michigan from October 18, 2012 until he was sentenced on state charges on January 23, 2014 were credited toward his state sentence at the time it was imposed,[10] and the remaining 386 days Petitioner spent in the primary custody of the state of Michigan before his federal sentence commenced have since been credited toward his federal sentence, he has already received all the prior custody credit he is entitled to receive. See Stopps Decl., ¶ 14 at 5 – 6; see also BOP Sentence Monitoring Computation Data, ECF No. 18-1 at 41.

As for Petitioner's insistence that because he was in exclusive custody of the federal authorities from October 18, 2012 through May 21, 2013, his federal sentence commenced on May 21, 2013, because a "federal sentence begins on the date it is imposed," therefore, he "was a sentenced [federal] inmate on May 21st, 2013 [ECF No. 21-1 at 6]," Petitioner is incorrect. As noted *supra*, a federal sentence commences "on the date the defendant is *received in custody* awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a) (emphasis added). Petitioner was not "in (federal) custody" for purposes of his federal sentence until November 9, 2016, when the state of Michigan relinquished him to the federal authorities after he completed his state sentence.

---

[10] The undersigned admits that although Respondent's explanation about which actual dates in pre-trial custody were applied as jail credit to Kenney's state sentence is somewhat unclear, nevertheless, it is apparent that all prior custody credit is accounted for, once a simple mathematical calculation is performed. The total number of days Petitioner spent in custody from the date he was first arrested on October 18, 2012 until November 9, 2016, when he was released from the primary custody of the state to commence his federal sentence was 1,483 days; 1,021 days of that time was spent serving his state sentence, leaving 461 days unaccounted for. From the date Kenney was first arrested on October 18, 2012 until January 23, 2014, when he was finally sentenced on state charges is 461 days. When the state of Michigan sentenced him, it awarded only 75 days of "jail credit" to his state sentence. Accordingly, because the sum of 386 and 75 is equal to 461, the BOP determined that he was entitled to 386 more days of prior custody credit, and that is what Petitioner received.

There being no genuine issue of material fact remaining, summary judgment should be granted to the Respondent.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that Respondent' Motion to Dismiss or for Summary Judgment [ECF No. 17] be **GRANTED**, and the petitioner's § 2241 petition be **DISMISSED with prejudice.**

The parties are notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to United States District Judge Thomas S. Kleeh.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, **any party shall have fourteen days from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  A copy of such objections shall be served on Judge Kleeh.

The Clerk is **DIRECTED TO** send a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy electronically to all counsel of record.

Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: January 21, 2020

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE